# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                  CR 04-2241 JC

ERIC LANE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Indictment for Delay in Prosecution, filed January 23, 2006 (*Doc. 8*) ("Motion").  The main issue is:  Upon whom falls the responsibility for insuring receipt by the Court and the United States Attorney of a sentenced prisoner's request for speedy trial pursuant to the Interstate Agreement on Detainers Act, 18 U.S.C. App. § 2?  Having considered the Motion, the parties' submissions, the binding authority on the issue, and having heard oral argument and considered proffered evidence on May 26, 2006, I find Defendant's Motion not well-taken and it must be denied.

## I.  Background

The following facts, except as otherwise noted, are undisputed.  Defendant brings this Motion alleging a violation of the Interstate Agreement on Detainers Act (IAD), 18 U.S.C. App. § 2. On November 9, 2004, a federal grand jury returned a three-count indictment charging Defendant Lane with violations of 18 U.S.C. § 922(g)(1) and 18 U.S.C. §§ 924(a)(2) (Felon in Possession of a Firearm and Amunition); 21 U.S.C. § 841(a) and 21 U.S.C. § 841(b)(1)(D) (Possession with Intent to

Distribute Less Than 50 grams of Methamphetamine); and 18 U.S.C. § 924(c)(1)(a)(iii) (Using or Carrying a Firearm in Relation to a Drug Trafficking Crime).

On November 18, 2004, Lane was in the custody of the New Mexico Department of Corrections, serving a sentence at the Central New Mexico Facility in Los Lunas, when he was properly served with a Detainer Against Sentenced Prisoner associated with the charges in this matter ("Detainer I"). Lane circled the "do" language on page (2) of the detainer, signifying his demand for a speedy trial pursuant to the IAD. Lane then returned the form to his classification officer, Jonathan Woodside, who assured Lane that he would present copies of the document to the United States Attorney and the United States District Court, in accordance with the requirements stated on page (2) of the Detainer.[1]

On June 10, 2005, while still a prisoner serving a sentence with the New Mexico Department of Corrections but then in the Lea County Correctional Center in Hobbs, Lane was served with another detainer ("Detainer II") and again demanded a speedy trial. *See* Mot., Ex. 2. Detainer II was presented to Lane by his case worker at Lea County, Craig Peterson, and it contained the same language as Detainer I. Detainer II has a fax transmittal date of June 7, 2004 and a note on its cover page from the U.S. Marshal addressing a request to Lane's caseworker that the detainer be presented to Lane, that it be read and signed, and that it be returned to the United States Marshal as soon as possible. *Id.* Peterson assured Lane that he would comply with the requirement to forward copies of Lane's Demand for Speedy Trial to the United States Attorney and the United States District

---

[1] Specifically, page (2) of the detainer states that "...if the prisoner demands a speedy trial, forward the detainer, together with the certificate of inmate status by registered or certified mail to the U.S. Attorney for the District of New Mexico and the U.S. District Court for the District of New Mexico." Mot., Ex. 1.

Court.[2]  Neither the Court nor the U.S. Attorney's office received a copy of Lane's request for speedy trial.

On December 28, 2005, when Lane's state sentence was complete, Lane was arrested by U.S. Marshals and was arraigned on the federal indictment in this case on December 29, 2005.  Between November 18, 2004, when Lane circled "do" on Detainer I, and the present date, the Government has sought no continuances or tolling of time.  Because more than one hundred-eighty (180) days have elapsed since Lane made his requests for speedy trial, Lane contends the indictment against him must be dismissed for violation of the IAD and he urges that such dismissal be with prejudice.[3]

## II.    Discussion

In support of his Motion, Lane relies on a non-binding and distinguishable case in support of his contention that the time for the government to bring him to trial began to run upon Lane's signing of the request for final disposition.  *See U.S. v. Johnson*, 196 F.3d 1000 (9th Cir. 1999).  It is settled, however, that a prisoner's transmittal of a request to prison authorities does not commence the180-day period, which is instead calculated from the time the request for speedy trial is delivered to the court and the prosecutor in the jurisdiction that lodged the detainer.  *Fex v. Michigan*, 507 U.S. 43 (1993).

The government asserts that the *Fex* case is dispositive and the Court cannot find a violation of Lane's right under the IAD on these facts and the existing law.  It is with some compunction that

---

[2]At the hearing on this Motion, the Court accepted, without objection from the government, Lane's proffer of testimonial evidence establishing that Lane inquired of his caseworkers if, in fact, the forms had been sent.  Lane was assured they had.

[3]Because I find no violation of the IAD, I need not address Lane's misplaced reliance on my Memorandum Opinion and Order dismissing the indictment with prejudice in *U.S. v. Frodsham*, No. 02-CR-0056 JC.

I agree.  In *Fex*, the Supreme Court not only held that the time begins upon receipt, but in so doing

reasoned as follows:

> Another commonsense indication pointing to the same conclusion is to be found in what might be termed (in current political jargon) the 'worst-case scenarios' under the two interpretations of the IAD.  Under respondent's interpretation, it is possible that a warden, through negligence or even malice, can delay forwarding of the request and thus postpone the starting of the 180-day clock.  At worst, the prisoner...will not learn about the delay until several hundred days have elapsed with no trial.  The result is that he will spend several hundred additional days under detainer...and will have his trial delayed several hundred days.  That result is bad, given the intent of the IAD. It is, however, no worse than what regularly occurred before the IAD was adopted, and in any event cannot be entirely avoided by embracing petitioner's view that transmittal to the warden is the measuring event.  As we have said, the IAD unquestioningly requires *delivery*, and only after that has occurred can one entertain the possibility of counting the 180 days from the transmittal to the warden.  Thus, the careless or malicious warden, under petitioner's interpretation, may be unable to *delay* commencement of the 180-day period, but cannot *prevent it entirely*, by simply failing to forward the request.  More importantly, however, the worst-case scenario under petitioner's interpretation produces results that are significantly worse:  If, through negligence of the warden, a prisoner's IAD request is delivered to the prosecutor more than 180 days after it was transmitted to the warden, the prosecution will be precluded before the prosecutor even knows it has been requested

*Id.* at 49-51 (emphasis in original) (internal citations omitted).  Thus, it is abundantly clear that the

Supreme Court has interpreted the IAD as placing the burden entirely on defendants to insure actual

delivery of the form, even in what it contemplated as the worst of scenarios.  It troubles me that the

*Fex* Court discounted the possibility that the document might not be delivered at all, which is

precisely the situation I face here, but I find no support for the notion that this factual distinction

might render *Fex* inapposite.  This is so particularly in light of the *Fex* Court's pronouncement that

preclusion of the prosecution before the prosecutor knows of the request is "significantly worse" than

a delay in commencement of the 180-day period.  *Id.*   Though I may not agree with the *Fex*

majority's reasoning, and find some merit in Justice Blackmun's  Dissent therein, the Supreme

Court's position is clear and I am bound by it.

## III.    <u>Conclusion</u>

Though I may disagree with placing the burden solely a prisoner to insure that his request for speedy trial pursuant the IAD is received by the prosecutor and the court under all circumstances, that is the law as I read it.  Further, because the 180-day period begins to run upon receipt, and there was no receipt, no violation of the IAD occurred.  Because the delay is attributable to Lane, I further find no violation of Lane's Sixth Amendment rights.  In so ruling, I note that if the manifest problems with the existing IAD procedures are to be addressed, necessary changes cannot be properly implemented from where I sit.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment for Delay in Prosecution, filed January 23, 2006 (*Doc. 8*), is DENIED.

DATED June 7, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for United States:

    Louis E. Valencia, AUSA
    Deputy Supervisor
    Albuquerque New Mexico

Counsel for Defendant:

    David L. Plotsky, Esq.
    Albuquerque, New Mexico